IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

MONICA ROBINSON,      :
        :
    Plaintiff,      :
        :
v.      :
        :    **No. 3:12-CV-20 (CAR)**
INTEGRATIVE DETENTION    :
HEALTH SERVICES, INC., HART    :
COUNTY, GEORGIA, SHERIFF MIKE :
CLEVELAND, BRUCE A. BAILEY,    :
LPN, BRIAN EVANS, EMT, MIKE    :
ADAMS, EMT, and ROBERT J.    :
WILLIAMS, M.D.,      :
        :
    Defendants.      :
_____ :

## <u>ORDER ON PLAINTIFF'S MOTIONS TO AMEND</u>

Before the Court are Plaintiff Monica Robinson's Motion for Leave to Amend

Complaint [Doc. 26] and Amended Motion for Leave to Amend Complaint [Doc. 36].[1]

In her proposed amended complaint, Plaintiff adds three different liability theories

against Defendants Hart County, Georgia ("Hart County" or the "County"), Sheriff

Cleveland, and Dr. Robert J. Williams.   After considering Plaintiff's Motion,

---

[1] Plaintiff's Amended Motion for Leave to Amend Complaint adds a prayer for relief that is consistent with a proposed amendment in her First Amended Complaint.  Specifically, Plaintiff requests that the Court compel the County to comply with its statutory obligation under Georgia law to pay Plaintiff's medical bills pursuant to O.C.G.A. § 42-5-2.  To the extent Plaintiff seeks to substitute the Revised First Amended Complaint in place of her First Amended Complaint, Plaintiff's Motion to Amend is **GRANTED**.  The Court will thus consider the amendment to her prayer for relief as though it were raised in her original Motion to Amend.

Defendants' response, and the relevant law, Plaintiff's Motion for Leave to Amend Complaint [Doc. 26] is **GRANTED in part** and **DENIED in part** and her Amended Motion for Leave to Amend Complaint [Doc. 36] is **GRANTED**.

## FACTS

The instant action arises from the alleged inadequate medical care Plaintiff received while incarcerated from July 22, 2010, until August 11, 2010, at Hart County Jail that caused her to suffer permanent spinal injury due to an untreated infection. When Plaintiff was booked into the Jail on July 22, Plaintiff noted she was in pain and had recently been hospitalized for a staph infection on her intake questionnaire. Over the next twenty-one days, Plaintiff's symptoms worsened from "not feeling well," to shoulder pain, back pain, constipation, numbness in her legs, and, eventually, the inability to walk and urinate.[2]  In keeping with Plaintiff's worsening condition, the Integrative Detention Health Services ("IDHS") medical staff gave Plaintiff a variety of different medications, beginning with Motrin and Benadryl, then prescription strength Tylenol, stool softeners, and eventually, on August 10, a prescription for Flexeril.

The next morning, August 11, Plaintiff had urinated on herself and was unable to get up off the floor of her cell.  That evening Plaintiff was taken, by ambulance, to the Hart County Hospital where she was presented with significant neurological

---

[2] [Doc. 1 ¶ 16].

compromise due to a spinal infection.  Plaintiff was promptly transferred to Athens Regional Medical Center for surgery early the next morning.

Based on these allegations, Plaintiff has brought several claims against multiple Defendants, including Hart County, Sheriff Crawford, IDHS, and Dr. Williams, the supervising physician and medical director of the IDHS staff.  In her original complaint, Plaintiff asserts, in relevant part, a supervisory physician liability claim against Dr. Williams and a 42 U.S.C. § 1983 claim against the County and Sheriff Cleveland for inadequate medical care pursuant to its unconstitutional policy or custom.  With respect to her latter claim, Plaintiff alleges the County Board of Commissioners and Sheriff were the policy-makers and final decision-makers regarding the inmates' medical care at Hart County Jail.  As part of her compensatory damages, Plaintiff requests payment of her medical bills.

The Court entered the Scheduling and Discovery Order on June 20 which provided a deadline of August 30, 2012, for the parties to seek leave to amend their pleadings.  Since that Order, the parties have diligently conducted discovery and taken numerous depositions.  Most recently, on January 23, 2013, the Court granted a joint motion to extend discovery until February 19, 2013, so that Plaintiff could depose two additional individuals.

After the deadline to amend the pleadings expired, Plaintiff deposed IDHS President Bruce Bailey, Sheriff Cleveland, and jail administrator Bobby Milford.  In

these depositions, Plaintiff learned additional facts regarding her claims against Dr. Williams and the County.  Specifically, in Bailey's deposition, Plaintiff learned IDHS medical staff consulted with Dr. Williams about Plaintiff's medical condition, contrary to Plaintiff's previous understanding that Dr. Williams only supervised the medical staff and did not participate in her treatment.  Plaintiff also learned through the depositions of Bailey, Cleveland, and Milford, that medical policies and decisions at the Hart County Jail were made by IDHS and its employees and agents, contrary to her original understanding that these decisions were made by the Sheriff and Board of Commissioners.

Based on the above deposition testimony, Plaintiff now seeks to amend her complaint in four respects: (1) add a professional liability claim against Dr. Williams for his own negligence in providing substandard treatment; (2) add an imputed liability claim against the County for the constitutional deprivations of IDHS, premised on the Board of Commissioners and Crawford's delegation of policy-making and final decision-making authority to IDHS; seek redress of her medical bills against the County under (3) the County's statutory obligation pursuant to O.C.G.A. § 42-5-2 and an order compelling the County to comply; and (4) seek redress of her medical bills as a third-party beneficiary to the contract between the County and Plaintiff's medical providers.  Defendants Hart County and Cleveland object to Plaintiff's second

4

and third proposed amendments.  The remaining Defendants have not responded to Plaintiff's Motion, and the time in which to do so has expired.

## DISCUSSION

When, as in this case, the time for amendment as of right has passed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[3]  While not raised in Plaintiff's initial brief, but recognized in her reply, Plaintiff's Motion to Amend was filed on October 24, 2012, outside the August 30, 2012 deadline established by the Scheduling Order.  Accordingly, Plaintiff must first establish good cause to amend the Scheduling Order.[4]

Rule 16 requires a district court to enter a scheduling order that dictates the time within which the parties must join additional parties, file motions, and complete discovery.[5]  "A schedule shall not be modified except upon a showing of good cause and by leave of the district judge. . . ."[6]  "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension."[7]  It is proper to deny a motion to amend under the Rule 16(b)

---

[3] Fed. R. Civ. P. 15(a)(2).

[4] Fed. R. Civ. P. 16(b) (a "schedule shall not be modified except upon a showing of good cause"); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) ("[B]ecause [plaintiff's] motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment was proper under Rule 15(a).").

[5] Fed. R. Civ. P. 16(b).

[6] *Id*.

[7] *Sosa*, 133 F.3d at 1418 (quotation omitted).

good cause analysis if the movant failed to argue good cause and failed to pursue the case with diligence.[8]  This Court considers three factors when deciding diligence: (1) if the moving party neglected to determine facts before filing pleadings or within discovery; (2) if the subject matter of the motion to amend was readily available to the moving party; and (3) if the moving party delayed filing the motion to amend.[9]

In her Motion, Plaintiff states she did not discover grounds to amend until conducting depositions in the fall, after the deadline to amend pleadings had expired. She additionally states she filed this Motion as soon as the deposition transcripts became available.  Defendants argue that Plaintiff has not acted in a timely manner, reciting the timeline of the action, including Plaintiff's open record requests made over a year before filing suit.

Based on the record, the Court concludes Plaintiff acted diligently in pursuing her claims and that there is good cause to amend the Scheduling Order.  Plaintiff's open record requests made prior to filing the Complaint are insufficient to establish that she failed to act diligently in filing her Motion, and Defendants do not argue that Plaintiff learned of this information before the depositions in September.  Accordingly, the Court finds Plaintiff has acted with diligence in filing her Motion and has established sufficient good cause to satisfy Rule 16(b).

---

[8] *Id*. at 1419.
[9] *See id*. at 1418.

After a finding of good cause to modify the Scheduling Order, this Court must consider whether Plaintiff's amendments satisfy Rule 15.   Under Rule 15, a party seeking to amend its pleading must have either the opposing party's written consent or the court's leave.[10]   Additionally, "the court should freely give leave when justice so requires."[11]  "In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be freely given."[12]

Defendants first argue Plaintiff's amendments would require additional discovery and thus substantially delay the proceedings.  The Court disagrees.  The parties began discovery eight months ago, and the record indicates the parties have diligently used this time to conduct discovery.   Additionally, the Court recently granted a joint motion to extend discovery on January 23, 2013, allowing the parties until February 19, 2013, to complete discovery.   In light of the procedural posture of the case and Plaintiff's previously obtained discovery regarding the amendments, the Court concludes that any resulting delay of these amendments will not be unduly prejudicial to the parties or action.

---

[10] Fed. R. Civ. P. 15(a)(2).

[11] *Id.*; *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 761 (11th Cir. 1995) (holding that a court has "extensive discretion to decide whether to grant leave to amend after the time for amendment as a matter of course has passed").

[12] *Wasdin v. Cheetah Transp., LLC*, 2006 WL 3534969, at *1 (M.D. Ga. Dec. 7, 2006) (quotation omitted).

Looking next at Plaintiff's proposed additional claim against Dr. Williams, the Court is unaware of any resulting prejudice from such an amendment.  Moreover, Defendants have not raised any argument indicating undue prejudice or futility of amendment.  Thus, the Court concludes that justice so requires this amendment, and Plaintiff's Motion in this regard is **GRANTED**.

Plaintiff additionally seeks to amend her complaint by imposing liability upon the County for the constitutional deprivations undertaken by IDHS.  In opposition, Defendants contend Plaintiff's amendment would be futile as it contains "little more than formulaic conclusions."[13]

In determining whether a motion to amend is futile, the Court examines whether the proposed amended complaint is "subject to dismissal" under Rule 12(b)(6).[14]   Under that standard, the Court determines whether, "construing the [proposed] complaint in the light most favorable to the plaintiff and accepting as true all facts which the plaintiff alleges," the proposed complaint fails to state a claim upon which relief may be granted.[15]   The proposed amended complaint must include sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[16]

---

[13] [Doc. 35 at 10].
[14] *Iguana, LLC v. Lanham*, 628 F. Supp. 2d 1361, 1367 (M.D. Ga. 2008).
[15] *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005).
[16] *Twombly*, 550 U.S. at 556.

Plaintiff's additional claim, when read in the context of the entire Complaint, seeks to hold the County liable for IDHS's constitutional deprivations.  Specifically, Plaintiff contends that, pursuant to IDHS policy "tantamount to official county policy," IDHS and its employees provided deliberately indifferent medical care to Plaintiff's serious medical needs by failing to take her complaint seriously, have her examined by qualified medical personnel, and take her to a doctor or hospital.[17] Plaintiff also alleges that the County Board of Commissioners and Sheriff delegated their authority as policy-makers and final decision-makers to IDHS with respect to inmates' medical care at the Hart County Jail, and, as a result, the County is liable for the policies and decisions of IDHS.  The Court concludes Plaintiff's complaint contains specific factual matter, which, if accepted as true, states a claim to which relief is plausible.[18]  Accordingly, the Court finds Plaintiff's Motion to Amend with respect to her imputed liability claim against the County is **GRANTED**.

Finally, the Court turns to Plaintiff's remaining amendments to impose alternative damages theories against the County.  Specifically, Plaintiff seeks to recover her medical expenses pursuant to the County's statutory obligation to pay

---

[17] [Doc. 26-1¶ 49C].

[18] *See Ancata v. Prison Health Services*, 769 F.2d 700, 705 (11th Cir. 1985) (holding municipal governments have a non-delegable duty to provide medical care to incarcerated individuals, and noting that any constitutional tort for which plaintiff seeks redress must be the result of an official policy or custom of the contracting entity).

under O.C.G.A. § 42-5-2, or, alternatively, as a third-party beneficiary to the contract between the County and her medical providers.

Because Defendants challenge only Plaintiff's claim for expenses under § 42-5-2, the Court begins its analysis here.  In her amended complaint, Plaintiff alleges Captain Milford arranged for Plaintiff to be taken to Hart County Hospital and Athens Regional Medical Center, and that once she arrived at the Medical Center, Milford and Defendant Cleveland obtained permission from the probation officer to release Plaintiff from the Hart County Jail "to alleviate the cost of keeping a guard at her door."[19]  She alleges that she was not physically capable of being released and this action was an improper attempt to circumvent the County's statutory obligation to pay.  Plaintiff attempts to assert this claim for damages as a mechanism to recover her medical expenses, and not as a separate theory of liability.

In their response, Defendants argue that the County's sovereign immunity has not been waived pursuant to § 42-5-2[20] and thus that Plaintiff's amendment is futile.  In *Macon-Bibb County Hospital Authority v. Houston County*,[21] the Georgia Court of Appeals required a county to pay an inmate's medical bills under § 42-5-2, despite the

---

[19] [Doc. 26-1 ¶ 29C].

[20] O.C.G.A. § 42-5-2 states, in relevant part, "[I]t shall be the responsibility of the governmental unit, subdivision, or agency having the physical custody of an inmate to maintain the inmate, furnishing him food, clothing, and any needed medical and hospital attention," including "bear[ing] the costs of direct medical services required for emergency medical conditions posing an immediate threat to life or limb if the inmate cannot be placed in a state institution for receipt of this care."  O.C.G.A. § 42-5-2.

[21] 207 Ga. App. 530, 531-32 (1993) (concluding county owed hospital for medical care provided to inmate in county jail).

county's admitted attempt to avoid medical and hospital expenses by releasing the inmate prematurely.[22]  In doing so, the court expressly rejected the county's sovereign immunity defense: "The county's immunity was waived by the legislatures' enactment of O.C.G.A. § 42-5-2, and its responsibility to pay all medical and hospital expenses may not be avoided by the defense of sovereign immunity."[23]  Subsequently, a federal district court, relying on *Macon-Bibb County Hospital Authority*, denied a county's motion for summary judgment with respect to a plaintiff's claim for medical expenses under § 42-5-2.[24]  Although the court did not discuss sovereign immunity, the court nevertheless concluded that a county may be liable for medical expenses under § 42-5-2 when it releases an inmate en route to the hospital.[25]

In opposition, Defendants reject this principle, and offer *Gish v. Thomas*[26] and *Howard v. City of Columbus*,[27] a different line of authority, that, according to Defendants, clearly establishes that sovereign immunity is not waived as to all claims under the statute.  The Court disagrees.

---

[22] *Id.* ("The county's attempt to reduce its liability by … [releasing the pre-trial detainee] when he was obviously not physically capable of being released, was an improper attempt to circumvent the county's statutorily imposed responsibility for [his] care.").

[23] *Id*.  *See also Dept. of Corrs. v. Barkwell*, 256 Ga. App. 877, 878 (2002) (reversing lower court's decision and holding that a state could sue negligent third parties who injured inmates in its custody to recover funds used to treat injured inmates under § 42-5-2).

[24] *Bunyon v. Burke Cnty.*, 306 F. Supp. 2d 1240, 1263 (S.D. Ga. 2004).

[25] *Id*.

[26] 691 Ga. App. 854 (2010)

[27] 239 Ga. App. 399, 410 (1999).

In *Gish*, the Georgia Court of Appeals held that a plaintiff's tort claim for failure to provide adequate medical care pursuant to § 42-5-2 was barred by sovereign immunity.[28]  In so holding, the court "reiterated" that the plaintiff did not present any federal law claims and "confine[d]" its holding to the plaintiff's "failure to provide medical care" claim.[29]  Similarly, in *Howard v. City of Columbus*, the court concluded that sovereign immunity barred claims for failure to <u>provide</u> adequate medical care.[30] In contrast, the *Macon-Bibb County Hospital* court held that sovereign immunity did not bar claims for failure to <u>pay for</u> medical care.[31]  Although this distinction may be slight, the Court concludes that it is sufficient to support a conclusion that such an amendment would not be futile.  Accordingly, Plaintiff's Motion to Amend with respect to this amendment is **GRANTED**.[32]

As to Plaintiff's fourth proposed amendment, she alleges the County contracted with the hospital to pay her medical bills and their refusal to do so constitutes a breach of contract, under which Plaintiff is a third-party beneficiary.  "In order for a third

---

[28] 691 302 Ga. App. at 864; *but see Cantrell v. Thurman*, 231 Ga. App. 510, 514 (1998) (finding that because medical care is a fundamental right, it is not discretionary, and thus, not subject to either sovereign immunity or official immunity).

[29] *Gish*, 691 Ga. App. at 864 n.11.

[30] *Howard*, 239 Ga. App. at 410; *see Middlebrooks v. Bibb Cnty.*, 261 Ga. App. 382, 384 (2003) (sovereign immunity bars tort action pursuant to § 42-5-2).

[31] *Macon Bibb Cnty. Hosp.*, 207 Ga. App. at 531-32.  This distinction is consistent with O.C.G.A. § 42-4-15(b) (effective May 2011) which seeks to limit a county's payment for medical care to only "emergency health care and follow-up health care services provided to a detainee."  Although this section is inapplicable to Plaintiff's claim, the Court acknowledges that this statute underscores the duty owed by the County to pay an inmate's medical expenses.

[32] Consistent with the Court's instant conclusion, Plaintiff's request to add a prayer for mandatory relief to compel the County to comply with its statutory obligation to pay her outstanding medical bills is also **GRANTED**.

party to have standing to enforce a contract, it must clearly appear from the contract that it was intended for his benefit.  The mere fact that he would benefit from performance of the agreement is not alone sufficient."[33]  Here, Plaintiff fails to allege that, by the terms of the contract, she was expressly intended as a third-party beneficiary.  The Court cannot conclude that she is entitled to relief as a third-party beneficiary simply because she stands to benefit from the contract.  Accordingly, the Court concludes that Plaintiff's third-party beneficiary request for relief is futile, and thus, Plaintiff's Motion as to paragraphs 56G and 56H is **DENIED**.

**CONCLUSION**

In sum, Plaintiff Monica Robinson's Amended Motion for Leave to Amend Complaint [Doc. 36] is **GRANTED**, and her Motion for Leave to Amend Complaint [Doc. 26] is **GRANTED in part** and **DENIED in part**.  Plaintiff's Motion is **GRANTED** with respect to proposed amendments (1), (2), (3), and (5), as enumerated in this Order, but her Motion is **DENIED** with respect to proposed amendment (4).   Plaintiff is **DIRECTED** to file the Revised Amended Complaint attached to her Amended Motion for Leave [Doc. 36] within seven (7) days of the date of this Order in compliance with the Federal Rules of Civil Procedure and consistent with this Court's Order.[34]

---

[33] *Walls, Inc. v. Atlantic Realty Co.*, 186 Ga. App. 389, 391 (1998).

[34] [Doc. 13-1 at 1 n.1]; s*ee Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219-20 (11th Cir. 2007) (unless an amendment specifically refers to or adopts the earlier pleading, an amended complaint supersedes and replaces the original complaint).

13

**SO ORDERED,** this 29th day of January, 2013.

S/  C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

LMH